RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0399p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SEAN M. BROOKINGS,

        *Plaintiff-Appellee,*

    *v.*

R.R. DENNY CLUNK, Judge,

        *Defendant-Appellant,*

STARK COUNTY, OHIO, et al.,

        *Defendants.*

No. 03-3511

> Appeal from the United States District Court
> for the Northern District of Ohio at Youngstown.
> No. 02-02115—Peter C. Economus, District Judge.

Argued: June 8, 2004

Decided and Filed: November 18, 2004

Before: SILER and GIBBONS, Circuit Judges; REEVES, District Judge.[*]

---

## COUNSEL

**ARGUED:** George D. Jonson, MONTGOMERY, RENNIE & JONSON, Cincinnati, Ohio, for Appellant. Randi A. Barnabee, DEBORAH A. SMITH & COMPANY, Northfield, Ohio, for Appellee. **ON BRIEF:** George D. Jonson, Hope A. Smith, MONTGOMERY, RENNIE & JONSON, Cincinnati, Ohio, for Appellant. Randi A. Barnabee, DEBORAH A. SMITH & COMPANY, Northfield, Ohio, for Appellee.

    REEVES, J., delivered the opinion of the court, in which SILER, J., joined. GIBBONS, J. (pp. 9-14), delivered a separate dissenting opinion.

---

## OPINION

---

    DANNY C. REEVES, District Judge. Defendant-Appellant R.R. Denny Clunk, Judge of the Stark County Court of Common Pleas, Probate Division ("Judge Clunk"), appeals the district court's denial of his motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on a claim

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

of judicial immunity. For the reasons set forth below, we hold that Judge Clunk is entitled to judicial immunity. Accordingly, we **REVERSE** the order of the district court.

## BACKGROUND

Sean Brookings was born female, but completed a sex reassignment procedure to become "male." On three occasions after the gender transition, Brookings applied for and received marriage licenses from the Stark County Probate Court. Brookings applied for the first license in 1988 and the second in 1990. The last application occurred December 20, 1994, when Brookings applied for a license to marry the late Lois Dimple McKinney Brookings ("McKinney").

On May 4, 2001, Vincent Alfera, counsel for the decedent's surviving son in a will contest action, wrote to Judge Clunk and the Stark County Prosecuting Attorney and provided documentation that Brookings had given false information to obtain a license to marry McKinney. Specifically, Alfera noted that Brookings had failed to truthfully attest to his legal sex (female), the number of his previous marriages (four), and his actual county of residence (Summit). This letter referenced Section 2921.13 of the Ohio Revised Code – the criminal statute which sets forth the penalty for making a false statement in a marriage application. Alfera also urged the recipients of the letter to bring charges against Sharon M. Perry/Sean Brookings.

On September 27, 2001, Judge Clunk filed a criminal complaint against Brookings for knowingly making false statements while applying for a marriage license in violation of O.R.C. §§ 2921.13 and 3101.05. Judge Clunk attested in the complaint that Brookings had purposefully made false statements to the probate court in connection with a proceeding within the court's jurisdiction in order to mislead the court in performing its official duties. Brookings was later arrested and charged with committing a misdemeanor in the first degree through a continuing course of conduct.

Brookings responded by moving to dismiss the criminal charges based on the applicable two-year statute of limitations. Thereafter, the Canton Municipal Court dismissed the criminal complaint, concluding that the criminal charges had not been initiated within the limitations period. Brookings then initiated a § 1983 action against Judge Clunk, claiming that the judge had violated his civil rights by pressuring the prosecutor's office to have him arrested and that Judge Clunk acted outside his jurisdiction in doing so.

On December 19, 2002, Judge Clunk filed a motion to dismiss the Plaintiff's § 1983 claims against him based on absolute judicial immunity. The district court denied this motion, concluding that Judge Clunk's actions were non-judicial and that he was not entitled to absolute judicial immunity.

## JURISDICTION AND STANDARD OF REVIEW

The court's jurisdiction to review this interlocutory appeal is based on the principle that a district court's denial of a claim of immunity, to the extent that it turns on an issue of law, is immediately appealable. *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985); *see also Barnes v. Winchell*, 105 F.3d 1111, 1114 (6th Cir. 1997). Specifically, the Supreme Court has stated that "the denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell*, 472 U.S. at 525.

The availability of absolute judicial immunity in the context of a Rule 12(b)(6) motion to dismiss presents a question of law. As such, the court's review of the district court's denial of the motion is *de novo*. *Barnes*, 105 F.3d at 1115. Moreover, as the proponent of the claim of absolute judicial immunity, Judge Clunk bears the burden of establishing that such immunity is warranted. *Id.* (citing *Antoine v. Byers & Anderson,* 508 U.S. 429, 432 (1993)).

## DISCUSSION

It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir. 1994) (A judge performing his judicial functions is entitled to immunity from a suit seeking monetary damages.). The Supreme Court has specifically held that state judges are absolutely immune from liability under 42 U.S.C. § 1983. *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983); *Pierson*, 386 U.S. at 554-55.

In fact, judicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice as has been alleged in this case. *Pierson*, 386 U.S. at 554; *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991). However, judicial immunity does not apply if the judge's activities were "non-judicial" in nature or if the judge's actions are performed without any jurisdiction to do so. *Id.*; *Stump v. Sparkman*, 435 U.S. 349, 362-63 (1978). Here, Judge Clunk contends that neither exception applies to his claim of absolute judicial immunity.

Although the applicability of judicial immunity on the facts presented here is a close question, for the reasons stated herein, we find that neither exception applies and that Judge Clunk is entitled to judicial immunity.

### A.          The Non-Judicial Acts Exception

In *Stump*, the Supreme Court established a two-prong test to determine whether an act is "judicial." *Id.* at 362. First, the court must consider whether the act in question is a function that is "normally performed by a judge." *Id.* This court has previously referred to this inquiry as the functional approach. Under this inquiry, a court is required to examine the nature and function of the act, not the act itself. The Supreme Court reformulated this inquiry in *Mireles* by establishing that, even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge. *Id.* at 13.

Second, in determining whether an act is "judicial," the court must assess whether the parties dealt with the judge in his or her judicial capacity. *Id.* at 12. In examining the functions normally performed by a judge, this court has recognized that "paradigmatic judicial acts," or acts that involve resolving disputes between parties who have invoked the jurisdiction of a court, are the touchstone for application of judicial immunity. *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997) (citing *Antoine*, 508 U.S. at 435-36). Conversely, whenever an action taken by a judge is not an adjudication between the parties, it is less likely that it will be deemed judicial. *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994).

In denying Judge Clunk's motion to dismiss, the district court concluded that his actions were not paradigmatic judicial actions. Specifically, the court found that the swearing-out of a complaint against Brookings was not a function that is "normally performed by a judge" in that his actions neither "resolved disputes" nor "adjudicated private rights." The court concluded that Judge Clunk's actions were prosecutorial in nature and that, at the time he filled out the complaint against Brookings, he was acting as an ordinary citizen, not a judge.

The district court specifically rejected Judge Clunk's assertion that he is entitled to judicial immunity because his actions were intended to protect the integrity of the judicial decision-making process. The court noted that, on September 27, 2001 (the time when Judge Clunk swore out the criminal complaint), Brookings was not a party before the court. As such, the district court concluded that Judge Clunk could not justify his actions by arguing that he performed prosecutorial functions as a result of a case "brought before [him] independently by the parties."

### (1)      "Normally Performed By A Judge"

This court has previously held that the initiation of accusatory processes such as criminal prosecutions is not a function normally performed by a judicial officer. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). However, in *Barnes v. Winchell*, the court explained that this exception to absolute immunity is a narrow one and that "even if a judge encroaches upon prosecutorial functions, the broad shield of absolute judicial immunity is not automatically overcome." *Barnes*, 105 F.3d at 1119.

In *Barnes*, this court conducted an extensive analysis regarding the distinctions between purely prosecutorial and judicial functions. In doing so, the court considered cases from this circuit as well as a number of other circuits. In particular, the court discussed the Eleventh Circuit's decision in *Harris v. Deveaux*, 780 F.2d 911, 916 (11th Cir. 1986), which held that a judge did not lose immunity for directing the entry of charges against a witness who appeared before the judge in a pending case.

In *Harris*, Municipal Court Judge Clinton Deveaux presided over a preliminary hearing against Phillip Jones, who had been charged with rape and false imprisonment. During the hearing, evidence was presented indicating that Stephanie Harris, the victim, had robbed Jones. Although the prosecutors objected, Judge Deveaux insisted that Harris be charged with armed robbery. He also ordered a detective to arrest her. Judge Deveaux indicated to the prosecutor that he would release Harris on her own recognizance if he would agree to the same reduction for Jones. The prosecutor refused. However, when Harris later appeared before Judge Deveaux, he learned that she had been released on her own recognizance. At that time, Judge Deveaux reduced the charge against Jones and released him on his own recognizance. The Eleventh Circuit concluded that Judge Deveaux's actions, although unusual, were judicial.

After reviewing cases from the Fifth, Seventh, Eleventh and Sixth Circuits, the *Barnes* court further noted that, in those instances where the judge initiates proceedings based on his private interests which are completely separate from the cases before him brought independently by the parties, the judge will likely not be protected by the doctrine of judicial immunity. *Barnes*, 105 F.3d at 1118. In support of this principle, the court relied on *Harris, supra,* and this circuit's decision in *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984).

In *Sevier*, Kenneth Turner, a county juvenile court judge, had the authority to collect delinquent child support payments. In an attempt to collect these payments, he instructed his staff to initiate criminal prosecutions against those fathers in arrears. He then used those impending criminal actions as leverage to obtain consent orders. Notably, Judge Turner received part of his salary from these payments. In distinguishing the two cases, the *Barnes* court noted that Judge Turner initiated charges, not as a result of a case brought before him by the parties, but as a result of events in his private, non-judicial life; that is, events in which he had a personal stake. *Barnes*, 105 F.3d at 1118. As a result, Judge Turner was denied immunity from suit. Judge Deveaux, however, was afforded immunity for his actions which "arose out of judicial proceedings brought before him by independent parties." *Barnes*, 105 F.3d at 1118 (quoting *Harris*, 780 F.2d at 915).

In making this distinction, the *Barnes* court also referred to the Seventh Circuit's decision in *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir.), *cert. denied*, 449 U.S. 1028 (1980), in which Circuit Judge William Vanderwater was denied judicial immunity for acts that the court held to be prosecutorial in nature. In addition to his profession as a judge, Judge Vanderwater also managed an apartment building. When Lopez, a former evicted tenant, returned to the apartment complex, Judge Vanderwater went to the complex with a handgun and detained him until the police arrived. At Judge Vanderwater's request, the officers arrested Lopez. Subsequently, Judge Vanderwater swore out a criminal complaint against Lopez for theft of a key and then proceeded to preside over his case. The court concluded that the judge was not entitled to immunity for "making the decision to prosecute, determining the offense to be charged, preparing the written charge . . . and presenting the charge . . . to himself." *Barnes*, 105 F.3d at 1117 (citing *Lopez*, 620 F.2d at 1235).

Ultimately, the *Barnes* court held that Judge Winchell was performing a judicial act when he assisted individuals who were before him as litigants in preparing their complaint against Barnes. The court noted that "Judge Winchell's level of involvement in the prosecution of Ms. Barnes [was] far less substantial and of a significantly different nature than the purely prosecutorial action to which immunity did not extend in . . . *Sevier* and *Lopez*." *Barnes*, 105 F.3d at 1119. Further, unlike the judges in those cases, Judge Winchell was not motivated by private interests, did not single-handedly initiate criminal charges against persons who did not have a case pending before him, and then subsequently pass judgment upon such charges. *Id.*

In *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997), this court again addressed the issue of whether the initiation of criminal proceedings against an individual constitutes a judicial act. Frank Barrett was the owner of a roofing business that was "involved in an ongoing controversy with the Department of Codes Administration of the Metropolitan Government of Nashville and Davidson County regarding work permits for various projects." *Id.* at 249. In September 1994, Barrett appeared before Nancy Harrington, a Metropolitan General Session Judge of Nashville and Davidson County, to answer two violations of the Environmental Codes. At the conclusion of the bench trial, Judge Harrington ruled against Barrett and he became enraged. Barrett then decided to investigate Judge Harrington and, in doing so, he discovered that she had previously dismissed parking tickets that had been issued to her and her husband. Barrett also made threatening remarks about Judge Harrington to court employees who advised Judge Harrington that she should be concerned for her safety.

In response, Judge Harrington wrote letters on her judicial letterhead to the state district attorney urging him to investigate Barrett because he was "attempting to obstruct justice by harassing [her] and [her] family." *Id.* Judge Harrington was also concerned that Barrett was attempting to set up a situation in which she would have to recuse herself from future cases against him, which "were likely to arise due to his ongoing dispute with the Codes Department." *Id.*

In concluding that absolute immunity shielded Judge Harrington from liability for her actions in writing letters to the prosecutors that prompted the investigation of Barrett, the court found that she was attempting "to protect the integrity of the judicial decision-making process." *Id.* at 259. The court noted that, "just as a judge's citation for contempt against a party who obstructs justice is a judicial act taken to preserve integrity of the *judicial system*, so too is the instigation of criminal proceedings against a disgruntled litigant whose conduct may amount to obstruction." *Id.* (emphasis added). Importantly, the court noted that it made no difference whether Barrett's alleged obstruction occurred inside or outside the courtroom. Rather, the fact that Judge Harrington believed Barrett's actions amounted to obstruction of justice in relation to her role as a judge imposed the duty to report such actions to the proper authorities. *See Barrett*, 130 F.3d at 259.

In reaching this conclusion, the *Barrett* court relied upon the logic from *Martinez v. Winner*, 771 F.2d 424 (10th Cir. 1985) (vacated and remanded on other grounds in *Tyus v. Martinez*, 475 U.S. 1138 (1986) and reversed in part by *Martinez v. Winner*, 778 F.2d 553 (10th Cir. 1985)). In that case, the Tenth Circuit addressed the scope of judicial immunity regarding actions taken by Fred Winner, (then) the Chief Judge of the United States District Court for the District of Colorado. Judge Winner was the presiding judge over Francisco Martinez's criminal case. The relevant issue in *Martinez* concerned whether Judge Winner was entitled to immunity for writing letters to the Justice Department and other law enforcement officials in which he accused Francisco Martinez of being a catalyst for bringing together terrorist groups and attempting to obstruct justice by collaborating with spectators to intimidate the jury. The court concluded that Judge Winner was entitled to immunity for writing these letters because he "had a duty to notify the proper authorities if he felt a crime was being committed in his courtroom." *Barrett*, 130 F.3d at 258 (citing *Martinez*, 771 F.2d at 435).

In the present case, Judge Clunk had a similar duty. Upon learning that Brookings had falsified information on his application for a marriage license, Judge Clunk had an obligation to report to prosecuting authorities that he felt a crime had been committed in his court. This was the third time Brookings had

applied for and received a marriage license from the Stark County Probate Court since his gender reassignment. Presumably, Brookings also failed to truthfully attest to relevant information in his prior requests for a license. Brookings' repeated attempts to fraudulently obtain marriage licenses provides further support for Judge Clunk's efforts to protect the integrity of the judicial system.

In *Barrett*, this court concluded that Judge Harrington's conduct in writing to prosecuting authorities was protected by judicial immunity. Specifically, the court noted that she was fearful that the harassment would cause her to have to recuse herself from *future* cases involving Barrett. Similarly, in the instant case, it is illogical to conclude that Judge Clunk, although aware that Brookings had committed fraud upon the court in applying for a marriage license, was required to sit silently and refrain from reporting such conduct to the proper authorities, particularly in light of Brookings' continuing course of conduct in fraudulently applying for marriage licenses. Additionally, if litigants are able to perpetrate fraud on courts and subsequently threaten judges with personal liability for reporting such behavior, the integrity of the judicial system is jeopardized. Such actions and their attendant results would encourage litigants to act unlawfully and limit a judge's ability to address such conduct through proper venues.[1]

As noted above, in determining whether this act is judicial, this court must examine the nature and function of the action, not the act itself. This circuit has held that even if the particular act is not a function normally performed by a judge, it may constitute a judicial act if it *relates* to a general function normally performed by a judge. *Barnes*, 105 F.3d at 1116 (quoting *Mireles*, 502 U.S. at 12-13). Admittedly, the swearing out of a criminal complaint is not a normal function of a judge. In fact, this type of conduct is typically undertaken by a citizen complainant or law enforcement personnel. And as previously noted, the instigation of criminal proceedings is not an adjudicatory function in that it does not resolve disputes between two parties, but rather it initiates one. However, the general function of Judge Clunk's conduct in initiating criminal proceedings against Brookings was to "preserve the integrity of the judicial system." *Barrett*, 130 F.3d at 259.

The Appellee argues that Judge Clunk's actions were not judicial because he acted with an evil motive in instigating criminal charges. Specifically, he asserts that Judge Clunk admitted that he "really twisted arms to get this [Brookings case] prosecuted." However, in *Forrester v. White*, 484 U.S. 219 (1988), the Supreme Court noted that a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." *Id.* at 227. For example, in *Mireles*, a judge ordered police officers to bring an attorney before him, with excessive force. In concluding that the judge was entitled to immunity, the court focused on the more general act of ordering counsel before the court, rather than the issue of the use of force. *Mireles*, 502 U.S. at 13.

In the instant case, the focus is on the act of initiating criminal proceedings against Brookings by swearing out a criminal complaint against him. Judge Clunk is entitled to immunity for this action because it was taken in an effort to preserve the integrity of the judicial system. The fact that Judge Clunk may have

---

[1] The dissent attempts to distinguish this Court's holding in *Barrett* from the facts of this case. However, as the dissent properly acknowledges, "[t]he entire focus of *Barrett*, [was on] the protection of the independent and fearless decision-making process." (Dissent, p. 12). Protecting this valuable right of the judiciary is likewise the focus of the instant case. Like *Barrett*, this case involves a litigant who had appeared on multiple occasions before Judge Clunk and was likely to appear before him in the future. The record reflects that, in 1994, Brookings appeared before Judge Clunk to obtain his third marriage license. With the death of his most recent spouse, Brookings may very well seek to re-marry in the future in which case he would again need to appear before Judge Clunk to obtain yet another marriage license. Judge Clunk, aware that Brookings had lied on his previous application for a marriage license, certainly had an obligation "to address this conduct by complaining to law enforcement without fear of liability." *See Barrett*, 130 F.3d at 260. If Judge Clunk were not free to address this type of conduct by Brookings, then his judicial independence in future cases involving Brookings and other individuals attempting to obtain marriage licenses would be compromised. Judge Clunk had an obligation to report that Brookings had falsified information on his application for a marriage license and, thus, had perpetrated fraud on the Court, so that future litigants, including Brookings, would not single-handedly be able to undermine the "judicial independence" and the "integrity of the judicial decision-making process." *Id.* Similar to the Judge Harrington in *Barrett*, Judge Clunk's purpose in swearing out a criminal complaint and thus reporting Brookings' actions to the proper authorities was to "protect the integrity of the judicial system." *Id.* at 257.

twisted the arms of the prosecutor to get the case prosecuted does not transform the act into one that is not covered by immunity.

In summary, Judge Clunk was engaged in a judicial act in swearing out a criminal complaint against Brookings upon learning that he had committed a crime in his court. Because Judge Clunk had information indicating that Brookings had falsified his application for a marriage license and had attempted to obstruct justice in a case then pending before him, he had a duty to report Brookings' conduct to the proper authorities. Therefore, we find that Judge Clunk's actions constitute a judicial act taken to preserve the integrity of the judicial system. *Barrett*, 130 F.3d at 259.

### (2)        Judicial Capacity

Several cases are noteworthy with respect to the issue of actions taken under the rubric of "judicial capacity." For example, in *Barnes*, this court discussed the Fifth and Seventh Circuit's decisions in *Harper v. Merckle*, 638 F.2d 848 (5th Cir. 1981), *cert. denied*, 454 U.S. 816 (1981) and *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980), *cert. denied*, 449 U.S. 1028 (1980), discussed *supra*, in which the courts refused to recognize judicial immunity.

*Harper* involved an individual (Jack Harper) who went to the chambers of County Judge Arden Merckle to drop off a support payment check for his former wife, a secretary employed by another county judge in an adjacent office. Judge Merckle asked Harper to be sworn in for questioning, but Harper refused. As a result, Judge Merckle then conducted a "contempt proceeding" after having Harper apprehended. Judge Merckle found Harper in contempt and incarcerated him for three days.

In determining whether Judge Clunk dealt with Brookings in his judicial capacity, the district court correctly noted that, at the time Judge Clunk swore out the complaint, Brookings was no longer a litigant in his court. However, the district court incorrectly concluded that this fact demonstrates that Judge Clunk initiated criminal proceedings against Brookings based on his private interests and not a result of a case "brought before [him] independently by the parties."

Judge Clunk filed a criminal complaint against Brookings based on his dealings with him in his role as a Probate Judge. Judge Clunk, unlike the judges in *Harper* and *Lopez*, did not initiate criminal charges based on his private, non-judicial life and then, in highly irregular proceedings, pass judgment upon such charges. Instead, the controversy between Judge Clunk and Brookings arose directly from a visit to the judge in his official capacity. *Stump*, 435 U.S. at 361.

### B.        Absence Of All Jurisdiction Exception

The Supreme Court has held that the term "jurisdiction" is to be broadly construed to effectuate the purposes of judicial immunity. *Stump*, 435 U.S. at 356. As such, a judge acts in the clear absence of all jurisdiction "only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides." *Johnson v. Turner*, 125 F.3d 324, 334 (6th Cir. 1997). Acts done "in the clear absence of all jurisdiction" for which no immunity is afforded, should be distinguished from those actions in "excess of jurisdiction" which fall within the ambit of immunity protection. *Barnes*, 105 F.3d at 1122.

Here, even if Judge Clunk exceeded his authority in filing a criminal complaint against Brookings, he did not act in the clear absence of all jurisdiction. Assuming, as the Appellee suggests, that Judge Clunk committed a procedural error by initiating criminal proceedings against Brookings, this type of mistake will not render him liable for damages. *See Stump*, 435 U.S. at 359 (holding that the commission of grave procedural errors, including those involving due process, does not constitute judicial action taken in the clear absence of all jurisdiction).

As a Probate Judge, Judge Clunk had jurisdiction over the subject matter of the underlying action. That is, he had the authority to issue a marriage license if he deemed it appropriate or to deny the license

if he determined that there was a "legal impediment." O.R.C. § 3101.05. Additionally, however, Judge Clunk had an obligation to report potentially obstructive conduct to the proper authorities if he felt such conduct had occurred in a case before him. As in *Barrett* and as conceded by the Appellee during oral argument, Judge Clunk could have satisfied this obligation by simply writing a letter to prosecutors outlining those matters that Brookings had falsified on his marriage license application. However, the issue in this case is whether Judge Clunk exceeded his authority when he went one step further and not only wrote a letter outlining Brookings alleged obstructive behavior but filed a criminal complaint against him.

In summary, the facts of this case support the conclusion that Judge Clunk's actions should be held to be an integral part of the judicial process. His obligation to report to the proper authorities that a potential crime had been committed in a case then pending before him leads this court to conclude that, at most, Judge Clunk simply acted in excess of his jurisdictional authority. Because we conclude that Judge Clunk did not act in complete absence of all jurisdiction, his actions are protected by absolute judicial immunity.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the decision of the district court and **REMAND** with directions that the claims asserted against Judge Clunk be dismissed.

––––––––––––––

**DISSENT**

––––––––––––––

JULIA SMITH GIBBONS, Circuit Judge, dissenting. In my view, when Judge Clunk filed a criminal complaint against Brookings for falsification under Ohio law, he was performing a non-judicial act in the absence of all jurisdiction. I therefore dissent.

Absolute judicial immunity should "be confined to situations where such immunity is not merely convenient but essential." *Forrester v. White*, 792 F.2d 647, 659-60 (7th Cir. 1986) (Posner, J., dissenting), *rev'd*, 484 U.S. 219, 230 (1988). The purpose of absolute judicial immunity is protection of judges from the fear of future litigation brought by disgruntled litigants unhappy with judicial decision-making. Traditionally, absolute judicial immunity does not extend beyond judicial rulings. *Id.* at 661.

Today the majority extends absolute immunity protection to a judge performing an admittedly non-judicial act that was not in any way related to the case-deciding process. In doing so, the majority expands the availability of an absolute immunity defense to virtually any situation in which judges perform non-judicial acts ostensibly undertaken to protect the integrity of their courts, an expansion without support in history or in case law. Moreover, even if I agreed with the majority that judges are entitled to absolute judicial immunity's broad protection when their acts arise, not in the context of a pending case, but under a generalized duty to report conduct detrimental to the integrity of the judicial system, Clunk did not simply report criminal conduct (an act that was completely unnecessary in this case since Alfera had already reported Brookings' conduct to the proper authorities). Instead, he himself initiated a criminal prosecution. Thus, the majority's holding is inapplicable to the facts and circumstances of this case. Finally, I disagree with the majority's conclusion that Clunk did not act in the absence of all jurisdiction when he initiated criminal proceedings against Brookings.

Absolute judicial immunity does not shield judges from liability on all occasions when they act in their official capacities. *See Forrester*, 484 U.S. at 229-30 (no absolute immunity for decision to discharge probation officer); *Supreme Court of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 734 (1980) (no absolute immunity when promulgating a code of conduct for attorneys). When a judge is performing a non-judicial act or acting in the absence of all jurisdiction, absolute judicial immunity does not apply. *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (citing *Mireles v. Waco*, 502 U.S. 9, 13 (1991)). Granting immunity to judges performing non-judicial acts or acting in the absence of all jurisdiction would be contrary to the purpose of judicial immunity. The doctrine of judicial immunity does not exist to make life easy for judges or to foster judicial peace of mind. *Forrester*, 792 F.2d at 660 (Posner, J., dissenting). Judicial immunity is intended to protect judicial independence, so that judges can decide cases without fear that they will be personally liable for their decisions. *Forrester*, 484 U.S. at 225; *Pierson v. Ray*, 386 U.S. 547, 554 (1967). As the Supreme Court noted in *Forrester*:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have . . . . [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits.

484 U.S. at 226-27.

The "touchstone" for judicial immunity, then, has been the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson,*

*Inc.*, 508 U.S. 429, 433 n.8 (1993) (citing *Burns v. Reed*, 500 U.S. 478, 500 (1991)). When an action taken by a judge is not an adjudication of disputes between parties, it is less likely that the action will be considered judicial. *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997). This is not to say that judicial immunity cannot be granted for any action other than the actual deciding of a dispute between parties. It *is* to say that when we are distinguishing between judicial acts for which immunity is appropriate and acts that simply happen to have been performed by judges, we should remember that "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester*, 484 U.S. at 227 (emphasis in original). The function judicial immunity protects and serves is fearless and independent judicial decision-making. *Id.* at 225; *Pierson*, 386 U.S. at 554; *Barnes*, 105 F.3d at 1121. When that function is not implicated, the protection of absolute immunity is not justified. *See Burns*, 500 U.S. at 486.

The filing of a criminal complaint, accompanied by the affidavit of a complainant, normally has nothing to do with the performance of the function of resolving disputes between parties. It is unsurprising, then, that this court and other courts have repeatedly held that absolute judicial immunity does not protect judges performing the purely prosecutorial functions involved in initiating criminal prosecutions. *Barnes*, 105 F.3d at 1118; *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984); *Lopez v. Vanderwater*, 620 F.2d 1229, 1235 (7th Cir. 1980). Yet, a judge can still be acting in his judicial capacity for immunity purposes when undertaking a seemingly prosecutorial action if it "relates to a function normally performed by a judge or [if] the parties are dealing with the judge in his judicial capacity." *Barnes*, 105 F.3d at 1119.

The majority holds that Clunk's act of filing a criminal complaint against Brookings relates to a function normally performed by a judge because judges have a duty to protect the integrity of their courts. It reasons that Clunk was acting pursuant to that duty when he reported Brookings' conduct (which according to the majority occurred "in a case then pending before him") to the proper authorities. Leaving aside for the moment the facts that Clunk did not simply report conduct, that Brookings' conduct had already been reported to the proper authorities and that there was no case involving Brookings then pending before Clunk, the majority's holding that an otherwise non-judicial act is somehow transformed into a judicial one whenever judges are acting to protect the integrity of their courts is contrary to established precedent. In *Supreme Court of Virginia*, the court held that judicial immunity does not apply to judicial promulgation of a code of conduct for attorneys, even though the issuance of such a code is an action undoubtedly undertaken by judges to protect the integrity of the courts. 446 U.S. at 734. In explaining why legislative, and not judicial, immunity furnished the appropriate standard, the court said, "Although it is clear that under Virginia law the issuance of the Bar Code was a proper function of the Virginia Court, propounding the Code was not an act of adjudication, but one of rulemaking." *Id.* at 731. It was the nature of the function performed (rulemaking), not the identity of the actors who performed it (judges), that informed the court's immunity analysis. Similarly, in *Gregory v. Thompson*, 500 F.2d 59, 64-65 (9th Cir. 1974), the Ninth Circuit held that a judge was not entitled to judicial immunity for his decision to forcibly expel a plaintiff from the judge's courtroom, even while acknowledging that judges have an obligation to protect "the sanctity and dignity" of courtroom proceedings:

> The decision to personally evict someone from a courtroom by the use of physical force is simply not an act of a judicial nature, and is not such as to require insulation in order that the decision be deliberately reached. . . . Judge Thompson's choice to perform an act similar to that normally performed by a sheriff or bailiff should not result in his receiving absolute immunity for this act simply because he was a judge at the time.

The above cases demonstrate that while judges may have a duty to perform certain acts, the existence of a duty does not necessarily mean any action taken in furtherance of that duty is "related to a function normally performed by a judge," thus entitling the judge to the protection of absolute judicial immunity. After all, judges normally perform the function of hiring and firing probation officers, and yet in *Forrester*, the Supreme Court held that immunity was not appropriate for those types of administrative decisions, even though they are "essential to the very functioning of the courts," because the decisions themselves "were

not . . . judicial or adjudicative." 484 U.S. at 228-29. "To conclude that, because a judge acts within the scope of his authority, such employment decisions are brought within the court's 'jurisdiction,' or converted into 'judicial acts,' would lift form above substance." *Id.* at 230. In this case, the majority opinion lifts form above substance by holding that, because Clunk has a duty to protect the integrity of his court, his actions in carrying out that duty somehow converted his prosecutorial act of filing a criminal complaint into a judicial one. This holding ignores the requirement that we examine the functions protected and served by the doctrine of absolute judicial immunity and consider whether those functions are furthered by granting immunity for the act in question. *See id.* at 224.

In each of the four principal cases relied upon by the majority to hold that Clunk's act of filing a criminal complaint was judicial in nature – *Barnes*, *Harris v. Deveaux*, 780 F.2d 911 (11th Cir. 1986), *Martinez v. Winner*, 771 F.2d 424 (10th Cir. 1985), *vacated and remanded by Tyus v. Martinez*, 475 U.S. 1138 (1986), and *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997) – the courts considered the nexus between the otherwise prosecutorial acts at issue and the role of judges in deciding cases brought before them independently by the parties. Each court concluded that the function of judges deciding cases fearlessly and independently was served by granting judicial immunity for the act in question. These cases thus do not stand for the broad proposition suggested by the majority that judges are entitled to the protection of absolute immunity whenever they undertake an act intended to protect the integrity of the judicial system. Instead, they stand for the much narrower proposition that a judge is entitled to absolute judicial immunity only when such immunity is necessary for the effective performance of the judge's function of deciding cases fearlessly and independently.

In *Barnes*, this court held that a judge was entitled to the protection of absolute immunity when, after being presented with a criminal complaint independently by two plaintiffs, he (1) directed that the charges be changed to allege a different crime, (2) notarized one of the plaintiff's complaints, (3) prepared or assisted in the preparation of one or both of the complaints, and (4) maliciously refused to dismiss the complaints after the prosecutor determined they were frivolous. 105 F.3d at 1119. In reaching that decision, we distinguished *Sevier* and *Lopez*, two cases in which courts had refused to grant judicial immunity for the performance of prosecutorial acts, by noting that, unlike the judges in those cases, the judge in *Barnes* was not responsible for the initial decision to file criminal charges. *Id.* The criminal charges thus did not belong to the judge; they belonged to the parties who had previously invoked the jurisdiction of the municipal court by setting the judicial process in motion. *Id.* Because the actions the judge undertook "*were all related to general functions involved in presiding over cases brought before him independently by the parties*," recognizing absolute judicial immunity in such circumstances furthered the "central policy justifications" behind the doctrine.

> Primarily because [the judge] was seated in his official capacity and deciding matters with respect to independent parties who invoked the jurisdiction of his court, the integrity and independence of judicial decision-making would be impaired if [the judge] were now called upon to account for his official decisions in a suit of this type. . . . In the underlying criminal prosecutions against [the defendant], her estranged spouse and his former wife brought allegations of criminal conduct before [the judge], calling upon the judge to act. Undoubtedly, this scenario would rouse intense feelings in the parties. It is precisely when an issue facing a judge sparks intense emotions that the judge's fidelity to independent and fearless decision-making is of the utmost importance. To render a judge liable to answer in damages to every litigant who feels aggrieved *during the course of judicial proceedings*, "would destroy that independence without which no judiciary can be either respectable or useful."

*Id.* at 1121-22 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)) (emphasis added) (citations omitted). As the preceding discussion should make clear, the focus in *Barnes* was on the relationship between the judge's seemingly prosecutorial actions and his function of deciding cases brought to him independently by the parties. Because that function would have been impaired if the judge later had to

explain his conduct in a civil lawsuit for money damages, we held that judicial immunity shielded his otherwise prosecutorial actions from liability. *Harris* and *Martinez* also both involved situations in which judges had performed prosecutorial acts while presiding over cases brought to them independently by the parties. *Harris*, 780 F.2d at 915; *Martinez*, 771 F.2d at 435.

By contrast, Clunk was not deciding a case brought to him independently by the parties when he filed the criminal complaint against Brookings. Brookings had not been a party in Clunk's court since he obtained his last marriage license in 1994. Although Brookings' conduct was brought to Clunk's attention by an attorney, Clunk was not presiding over a case brought to him independently by the parties at that time. Clunk's decision to file a criminal complaint was in no sense judicial or adjudicative. Here, the criminal allegations contained in the complaint belonged to Clunk and to Clunk alone. Clunk was the person who set the judicial process in motion when he swore to the affidavit supporting the criminal complaint and filed the complaint and affidavit. He was not an official who, when presented with a case by independent parties, went beyond his judicial authority and performed certain prosecutorial acts during the process of deciding the dispute. And, most importantly, the unavailability of judicial immunity to Clunk will not impair his fearless and independent judicial decision-making, since his filing of the complaint occurred in no decision-making context.

The only case relied upon by the majority holding that a judge was entitled to judicial immunity for the performance of a seemingly prosecutorial act that did not occur in the context of a case brought to the judge independently by the parties is *Barrett*. Even in that case, however, we were careful to emphasize the relationship between the prosecutorial act and the integrity of the "case-deciding process." *Barrett* considered whether judges are entitled to judicial immunity when they write letters to prosecutors reporting the threatening conduct of disgruntled former litigants. 130 F.3d at 259-60. As the majority notes, Barrett had been a frequent litigant in Judge Harrington's courtroom, and Judge Harrington had ruled against him on several occasions. *Id.* at 249-50. She believed him to be a likely party in future cases due to his ongoing dispute with the Codes Department. *Id.* at 249. After being warned by other judges and court personnel that Barrett had made threatening remarks about her, Judge Harrington wrote a letter to prosecutors on her judicial letterhead requesting that they investigate Barrett because she felt he was attempting to obstruct justice by harassing her and her family. *Id.* at 259. The majority opinion selectively quotes from language in *Barrett* to arrive at its proposition that judges are entitled to the protection of absolute immunity whenever they are acting to protect the integrity of their courts. A close reading of the case, however, reveals that once again, our emphasis was on the nexus between the particular act in question and the judicial function of deciding cases independently. While Judge Harrington's conduct did not concern whether Barrett would win or lose a case, her letters did involve the "case-deciding process" because she "wrote to express her fear that the harassment would cause her to have to recuse herself from future cases involving [Barrett]," and recusal "is undoubtedly an act that concerns judicial decision-making." *Id.* at 258. We found that the general function of Judge Harrington's conduct in writing to the prosecuting authorities therefore was "to protect the integrity of the judicial decision-making process" because "there was a direct relational nexus between [Judge] Harrington's judicial decisions, Barrett's response in 'investigating' and threatening her, and [Judge] Harrington's response in contacting the prosecuting authorities." *Id.* at 259. Barrett's entire course of conduct was focused on Judge Harrington in her role as a judge. His actions were taken in direct response to her judicial decisions and conduct. *Id.* at 260. Under those circumstances, we concluded:

> If the judge were not free to address this conduct by complaining to law enforcement without fear of liability, the judge's freedom of action in insuring the integrity of his or her decision-making process, and indeed, his or her decisions themselves, will be jeopardized. Any result which did not extend immunity to judges acting to protect the integrity of the judicial decision-making process would seriously undermine judicial independence, a cornerstone of a judge's capacity to sit and decide cases.

*Id.* The entire focus of *Barrett*, then, is protection of the independent and fearless decision-making process.

Unlike the danger to Judge Harrington's independent decision-making posed by Barrett's threats, Brookings' conduct in no way affected Clunk's exercise of judicial independence in present or future cases. At most, Clunk acted to redress a falsification that perhaps affected the result in a case that came before him and was concluded six or seven years previously. Clunk was not acting to protect himself from future action by a disgruntled former litigant, as was the case in *Barrett*. Even if he was acting to protect the integrity of the court when he filed the criminal charge against a former party in his court, his purpose does not transform his otherwise prosecutorial act into a judicial one. To transform this prosecutorial act into a judicial act and thus grant absolute judicial immunity would be contrary to the mandate that the applicability of absolute judicial immunity is determined by the functions it protects, most particularly that of independent judicial decision-making. *Forrester*, 484 U.S. at 225.

Even if one accepts the majority's premise that a judge's duty to protect the integrity of the judicial system renders each act performed in the furtherance of that duty judicial in nature, one does not inevitably reach the conclusion that Clunk is entitled to absolute immunity in this case. The majority concludes that "[b]ecause Judge Clunk had information indicating that Brookings had falsified his application for a marriage license . . . he had a duty to report Brookings' conduct to the proper authorities," and his actions therefore constituted "a judicial act taken to protect the integrity of the judicial system." Op. at 15. Unfortunately, as the majority's own recitation of the facts makes clear, Brookings' conduct had already been reported to the prosecuting authorities when Clunk filed the criminal complaint against him. Clunk was aware of this because the letter informing Clunk that Brookings had given false information in order to obtain a marriage license was also addressed to the Stark County Prosecuting Attorney. Op. at 2. Despite the knowledge of "proper authorities," Clunk concluded that he himself should initiate the criminal proceedings against Brookings and thus went well beyond any duty to report. In doing so, he performed a purely prosecutorial act for which he is not entitled to the protection of absolute judicial immunity.

The majority offers one remaining reason to justify its conclusion that Clunk acted in his judicial capacity and is thus entitled to absolute immunity. The majority says that Clunk was acting in his judicial capacity when he filed the criminal complaint against Brookings because the complaint was based on Brookings' dealings with him in his role as a probate judge, and not in his role as a private citizen. While Clunk may have acted in his official capacity when he filed the criminal complaint against Brookings, this does not mean that he was acting in his *judicial* capacity for purposes of the absolute immunity analysis when he did so. The absence of a personal stake in this matter does not render Clunk's conduct judicial or dictate that the parties in this case were dealing with him in his judicial capacity. In fact, the parties were not dealing with Clunk *at all* at the time that he initiated the criminal complaint because there was no case involving Brookings currently pending before him. Moreover, as previously discussed, acting in an official capacity, taken alone, does not entitle a judge to judicial immunity.

Finally, the majority concludes that Clunk had jurisdiction over the subject matter of the underlying action in this case because "[a]s a probate judge . . . he had [the] authority to issue a marriage license if he deemed it appropriate or to deny the license if he determined that there was a legal impediment." Op. at 17. Acting in the absence of all jurisdiction deprives a judge of absolute immunity. *Mireles*, 502 U.S. at 13. A judge acts in the clear absence of all jurisdiction "only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides." *Johnson*, 125 F.3d at 334. The underlying action in this case is not the issuance of Brookings' marriage license; the decision to issue a marriage license was made long ago. The underlying action is the criminal prosecution for falsification, and, as a probate judge, Clunk did not have jurisdiction over that action under any circumstances. *See DePiero v. City of Macedonia*, 180 F.3d 770, 785 (6th Cir. 1999) (citing *Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978)) ("[A] criminal court judge would be immune from liability for convicting a defendant of a nonexistent crime, an act taken in excess of jurisdiction, whereas a probate court judge would not be immune for trying a criminal case, an act for which the probate judge clearly lacked all subject matter jurisdiction."). In support of its determination that Clunk had jurisdiction over the underlying action in this case, the majority once again notes Clunk's "obligation to report potentially obstructive conduct to the proper authorities."

This view glosses over the posture of this case and assumes that Clunk's duty to protect the integrity of the judicial system somehow has the effect of bringing criminal prosecutions under his jurisdiction.

In conclusion, I note that the Supreme Court has been "quite sparing" in its recognition of absolute immunity, *Forrester*, 484 U.S. at 224, and with good reason. The decision to hold certain officials absolutely immune from liability for the performance of certain discretionary functions is not without cost. An official granted such immunity cannot be sued, even for acts of deliberate wrongdoing. This is a high price to pay for "a society that prides itself on subjecting even its highest officials to the restraints of law." *Forrester*, 792 F.2d at 659 (Posner, J., dissenting). The availability of qualified immunity, a doctrine not mentioned by the majority, makes this unwarranted extension of the doctrine of absolute immunity as unnecessary as it is inappropriate. As judges, we must be especially sensitive to the potential charge that we are extending judicial immunity beyond the protection other types of immunity give to "officials whose peculiar problems we know less well than our own." *Forrester*, 484 U.S. at 226. Absolute judicial immunity is justified only when the danger that a judge will be deflected from the performance of his function of deciding cases "fearlessly and independently" is very great. *See id.* at 230. No such danger, great or small, exists here.

For all the reasons stated above, I would affirm the judgment of the district court.