NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1128n.06

No. 11-4289

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

MARK E. HUFFER,

    Plaintiff-Appellant,

v.

MARK BOGEN, Judge, Lebanon Municipal Court; MICHAEL McCUTCHAN, Patrolman for the City of Lebanon; JAMES BURNS, Patrolman for the City of Lebanon; MATTHEW J. GRABER, Prosecutor, Lebanon Municipal Court; ANDREA HICKS, Prosecutor, Lebanon Municipal Court; BRENDA K. MORGAN, Clerk, Lebanon Municipal Court; VIVIAN T. HUFFER; CITY OF LEBANON; MEL PLANAS, Warren County Prosecutor; KRISTY WHALEY, Probation Officer, Lebanon Municipal Court; DANIELLE RENEE BISHOP; COUNTY OF WARREN; KRISTY SOMMERS, Probation Officer, Warren County Adult Probation,

    Defendants-Appellees.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**FILED**

*Nov 01, 2012*

DEBORAH S. HUNT, Clerk

<br><br>

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

</td></tr>
</table>

---

BEFORE: SUTTON and GRIFFIN, Circuit Judges; and WELLS, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff Mark E. Huffer filed a complaint in the district court against the municipal court judge who presided over his underlying domestic violence case and various city and county officials

---

[*]The Honorable Lesley Wells, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

involved in his arrest and prosecution. The complaint alleged numerous civil rights violations, including malicious prosecution, judicial misconduct, and unlawful detention. The municipal court judge filed a motion to dismiss, which the district court granted. Thereafter, the county officials filed a motion to dismiss, and the city officials filed a motion for judgment on the pleadings or, in the alternative, to dismiss. In a single order, the district court granted the motions. Huffer appeals the district court's judgment. We affirm.

I.

As alleged in the complaint, Huffer was arrested for domestic violence in 2007. At the time of his arrest, he was on diversion from a previous domestic violence case. Through the assistance of counsel, Huffer pleaded guilty to the 2007 charge. The relevant docket entry indicates that Huffer was held without bond. Huffer alleges that he remained incarcerated for a "period of time" before being released. After his release, he was arrested again, this time for violating a temporary protection order. He remained incarcerated until his counsel filed a motion to set aside or reduce his bond. By then, his diverted domestic violence case had been reactivated, and he pleaded guilty to two criminal charges of domestic violence. The remaining criminal charges were dismissed.

According to Huffer, defense counsel told him that the prosecutor would oppose any bond reduction, and he would remain incarcerated for ninety days awaiting trial if he did not plead guilty. Huffer alleges that he was not adequately informed that a domestic violence conviction could enhance the penalty for any subsequent domestic violence conviction. In addition, Huffer owns and operates a business with fifteen employees, and, during his incarceration, his children had to stay

with their mother, Huffer's ex-wife, even though Huffer had custody of them. Further, Huffer's father had suffered a stroke, and his mother had suffered what Huffer believed was a nervous breakdown. Huffer claims that he pleaded guilty in order to regain his freedom, restore and maintain his business, regain custody of his children (who he believed were living in dangerous circumstances), and assist his ailing parents.

In 2008, after a judgment of conviction had been entered, Huffer moved the municipal court to withdraw his pleas and vacate his convictions. The municipal court, Judge Mark Bogen presiding, found that Huffer's pleas were made voluntarily and knowingly. In what Huffer characterizes as misleading statements, Judge Bogen said that he had "reviewed the transcript" of the plea proceedings and "all rights were read to [Huffer]." Accordingly, Judge Bogen denied the motion.

In 2009, the state appellate court reversed Judge Bogen's judgment and remanded the case for further proceedings because it could not discern whether a proper colloquy under Rule 11 had taken place in the plea proceedings. Huffer alleges that the prosecutor falsely assured him that his charges would be dismissed following this reversal.

In 2010, Huffer filed a nine-count complaint[1] in the district court against Judge Bogen, Warren County, the City of Lebanon, city patrolmen Michael McCutchan and James Burns, city prosecutors Matthew Graber and Andrea Hicks, municipal court clerk Brenda Morgan, county prosecutor Mel Planas, probation officers Kristy Whaley and Kristy Sommers, and the individuals

---

[1]Confusingly, Huffer's Sixth, Seventh, and Eighth Counts are all labeled "Count Six," and his Ninth Count is labeled "Count Seven."

who reported the alleged domestic violence, Huffer's ex-wife, Vivian Huffer, and her sister, Danielle Bishop. The complaint alleged numerous state and federal civil rights violations, including malicious prosecution, judicial misconduct, and unlawful detention. *See, e.g.*, 42 U.S.C. § 1983.

Judge Bogen moved to dismiss the complaint. (R.16 at 1; Pg ID at 65.) The district court granted Judge Bogen's motion based on judicial immunity, failure to state a claim, and lack of a case or controversy.

Thereafter, the county defendants filed a motion to dismiss, and the city defendants filed a motion for judgment on the pleadings or, in the alternative, to dismiss. In a single order, the district court granted the motions based on prosecutorial immunity, quasi-judicial immunity, qualified immunity, failure to state a claim, and the running of the applicable statutes of limitations.

## II.

We review a district court's grant of a Rule 12(c) motion for judgment on the pleadings under the same de novo standard used to review dismissals under Rule 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). We construe the complaint in the light most favorable to the plaintiff, accepting his well-pleaded factual allegations as true. *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010).

## III.

Huffer first argues that the district court erred when it granted Judge Bogen's motion to dismiss. Judges are absolutely immune from § 1983 suits arising out of their performance of judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967). As the United States Supreme Court has

observed, "[a judge's] errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." *Id*. at 554. As such, judicial immunity applies even to judicial acts performed maliciously, corruptly, in bad faith, or in error. *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). Indeed, there are only two exceptions to judicial immunity: a judge is not immune from suits for acts that are (1) not judicial in nature or (2) performed without jurisdiction. *Id*.

Huffer claims that judicial immunity does not apply because Judge Bogen acted outside his judicial capacity when he incarcerated Huffer without bond and denied his motion to withdraw his guilty pleas, stating that he had "reviewed the transcript" and "all rights were read to [Huffer]." Huffer asserts that Judge Bogen's actions were "egregious" and without a "conceivable justification," and that his statements were "materially misleading."

Huffer's assertions, in addition to being conclusory, describe judicial acts. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Here, ordering Huffer incarcerated without bond, denying his motion to withdraw his guilty pleas, and making statements on the record were undeniably judicial acts, as they are functions normally performed by a judge. And Huffer, as a criminal defendant in a case over which Judge Bogen was presiding, dealt with Judge Bogen in his judicial capacity. Even assuming for the

purpose of argument that Judge Bogen's actions were egregious, unjustified, or misleading, the acts were no less judicial. *See Brookings*, 389 F.3d at 617; *see also Stump*, 435 U.S. at 356–57 (stating that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority"). Accordingly, the first exception to judicial immunity does not apply.

The second exception is likewise inapplicable, as Judge Bogen had jurisdiction over Huffer's domestic violence case. *See* Ohio Rev. Code §§ 1901.02(B), 1901.20(B). It makes no difference for purposes of immunity whether Judge Bogen's actions were unjustified or improper. *Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. 1997). For the exception to apply, a judge must have acted "in the clear absence of all jurisdiction," as opposed to merely "in excess of authority." *Id.*

In the absence of an applicable exception, Judge Bogen was entitled to absolute judicial immunity. Accordingly, the district court properly granted Judge Bogen's motion to dismiss.

IV.

Huffer next argues that the district court erred when it granted the county defendants' motion to dismiss and the city defendants' motion for judgment on the pleadings or, in the alternative, to dismiss. The district court decided both motions in a single order, basing its judgment on prosecutorial immunity, quasi-judicial immunity, qualified immunity, failure to state a claim, and the running of the applicable statutes of limitations.

First, Huffer challenges the district court's determination that prosecutors Planas, Graber, and Hicks were entitled to prosecutorial immunity. Prosecutors enjoy absolute immunity from civil

liability for actions performed within the scope of their prosecutorial duties. *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012). Without this immunity, "the prosecutor's exercise of independent judgment would likely be compromised to the detriment of public trust and the effective functioning of the criminal justice system," and the threat of liability could "divert[] the prosecutor's energy from 'the pressing duty of enforcing the criminal law.'" *Ireland*, 113 F.3d at 1444 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 425 (1976)).

Huffer argues that immunity does not apply because the prosecutors in this case acted outside their prosecutorial duties when they prosecuted him without probable cause and based on false information. This argument lacks merit. Prosecutorial immunity extends to claims regarding the evaluation of evidence and the determination of probable cause. *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). Immunity applies even where the prosecutor acted wrongfully or maliciously. *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989). Indeed, "immunity extend[s] to the knowing use of false testimony before the grand jury and at trial." *Burns v. Reed*, 500 U.S. 478, 485 (1991). As the district court reasoned, simply stating that the prosecutors acted outside their traditional prosecutorial duties "does not make it so." The prosecutors were entitled to absolute prosecutorial immunity.

Second, Huffer argues that city patrolmen McCutchan and Burns were not entitled to qualified immunity. This court summarized the doctrine of qualified immunity in *Hoover v. Walsh*:

> [T]he doctrine of qualified immunity shields certain government officials, including police officers, from civil liability in certain circumstances. To determine whether qualified immunity applies, we engage in a two-step inquiry, determining "(1) whether, considering the allegations in a light most favorable to the party injured, a

constitutional right has been violated, and (2) whether that right was clearly established." We may address these prongs in either order; indeed, either one may be dispositive. Once the defense of qualified immunity has been raised, it is the plaintiff's burden to demonstrate that the defendants cannot avail themselves of it.

682 F.3d 481, 492 (6th Cir. 2012) (internal citations and footnotes omitted).

The allegations in Huffer's complaint are conclusory. He claims that the officers "took actions" that violated his civil rights and "conspired" to wrongfully imprison him. Even viewing these bare allegations in the light most favorable to Huffer, they do not show that a constitutional right was violated. Huffer was first arrested in response to reports of domestic violence while he was on diversion from another domestic violence case, and he was later arrested for allegedly violating a temporary protection order. Under the circumstances, the officers reasonably arrested him. To the extent that Huffer argues that the victims' allegations of domestic violence were untrue, this does not make his arrests unconstitutional. *See Gardenhire v. Schubert*, 205 F.3d 303, 322 (6th Cir. 2000) ("[A] crime victim's accusation standing alone can establish probable cause."). Because the complaint did not allege facts to support a violation of a constitutional right, the district court properly determined that the officers were entitled to qualified immunity.

Third, Huffer argues that the district court erred when it determined that court clerk Morgan and probation officers Sommers and Whaley were entitled to quasi-judicial immunity. As discussed above, judges are absolutely immune from liability for suits arising out of their performance of judicial functions. *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (per curiam). "One who acts as the judge's designee, and who carries out a function for which the judge is immune, is likewise protected." *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997). Quasi-judicial immunity has been

held to apply to probation officers and court clerks. *See, e.g.*, *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988) (per curiam) (court clerk); *Timson v. Wright*, 532 F.2d 552, 553 (6th Cir. 1976) (per curiam) (chief probation officer).

In this case, the court clerk merely implemented Judge Bogen's order as instructed. In doing so, the court clerk was carrying out a judicial act to which absolute immunity attached. *See Foster*, 864 F.2d at 417 ("[A] clerk who issues a warrant at the direction of a judge is performing a function to which absolute immunity attaches."). The fact that the court clerk's action did not require discretion or judgment on her part does not change its judicial character. *Id.* The cases relied on by Huffer are distinguishable because they involve nonfeasance on the part of the court clerk. *See, e.g.*, *Mauro v. Cnty. of Kittitas*, 613 P.2d 195, 197 (Wash. Ct. App. 1980) (court clerk not entitled to judicial immunity for failure to recall a warrant). This is not a case of nonfeasance; the court clerk properly implemented Judge Bogen's order as instructed.

The probation officers were also entitled to quasi-judicial immunity. "[W]hen a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. . . . All of the same considerations that would apply to the judge apply to the probation officer." *Balas v. Leishman-Donaldson*, No. 91-4073, 1992 U.S. App. LEXIS 22411, 1992 WL 217735, *5 (6th Cir. Sept. 9, 1992) (per curiam). Here, the probation officers were performing a judicial function when they determined that Huffer had violated the terms of his probation. *See Loggins v. Franklin Cnty.*, 218 F. App'x 466, 476 (6th Cir. 2007). In this regard, the district court did not err.

Fourth, Huffer argues that his complaint stated claims of conspiracy to violate his civil rights and malicious prosecution. To survive a motion to dismiss, the complaint must contain sufficient factual allegations to support a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although factual allegations need not be detailed, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" provide insufficient grounds for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In Count Three, Huffer alleged that defendants "conspired" to violate his civil rights. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. . . . All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). However, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

In this case, Huffer's claim of conspiracy merely described the actions taken by various individual defendants, asserting that their actions were taken in furtherance of a conspiracy. Huffer's claim is conclusory and fails to include allegations regarding an agreement or shared plan between

the individual defendants to violate his civil rights. As such, the district court properly concluded that he failed to state a claim of conspiracy against the individual defendants.

The failure to state a claim against the individual defendants is also fatal to any conspiracy claim against Warren County and the City of Lebanon. Moreover, the doctrine of respondeat superior is not available in § 1983 actions. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). The only basis for § 1983 liability against a government entity is that a constitutional violation resulted from the government's policy or custom. *Caudill v. Hollan*, 431 F.3d 900, 914–15 (6th Cir. 2005). As the district court pointed out, Huffer's complaint failed to identify any policy or custom that resulted in a constitutional violation.

In Count Seven, Huffer alleged that patrolmen McCutchan and Burns maliciously prosecuted him in violation of state law. The elements of malicious prosecution in Ohio are: "(1) malice in instituting (or continuing) the prosecution, (2) lack of probable cause, and (3) termination of the action in favor of the defendant." *Swiecicki v. Delgado*, 463 F.3d 489, 503 (6th Cir. 2006). Huffer's claim of malicious prosecution is insufficient because it merely asserts, in a conclusory fashion, that various defendants initiated the criminal proceedings against him "without probable cause" and "maliciously." Moreover, Huffer acknowledges that charges were brought against him based on victim accusations of domestic violence and violation of a temporary protection order, which alone suffice to provide probable cause. *See Gardenhire*, 205 F.3d at 322 (Batchelder, J., concurring in part and dissenting in part). Finally, Huffer's criminal case was not "terminated" in his favor by the state appellate court, but was reversed and remanded for further proceedings.

In Count Four, Huffer alleged that patrolmen McCutchan and Burns maliciously prosecuted him in violation of 42 U.S.C. § 1983, specifically, that his prosecution was "initiated with malice" and "in the absence of probable cause." For reasons previously stated, Huffer does not allege sufficient facts to support these bare assertions. The district court did not err when it determined that Huffer failed to state claims of conspiracy to violate § 1983 and malicious prosecution.

The final issue is whether several of Huffer's claims were untimely. His state-law claims of false imprisonment and false arrest were subject to a one-year statute of limitations. Ohio Rev. Code § 2305.11(A). His claim of false imprisonment under § 1983 was subject to the statute of limitations that Ohio provides for personal-injury torts, which is two years. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); Ohio Rev. Code § 2305.10(A). It is undisputed that Huffer did not file his complaint until over three years after his arrest. As such, his claims of false arrest and false imprisonment were not filed within the applicable statutes of limitations. *See Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (explaining that "claims for false arrest and false imprisonment . . . generally accrue at the time of the arrest"). Huffer cites no authority to support his argument that these claims accrued when the state appellate court vacated his guilty pleas. Thus, the district court properly determined that his claims of false arrest and false imprisonment were time-barred.

V.

For these reasons, we affirm.